**HARMEL CORPORATION**

v.

**MEMBERS OF the ZONING BOARD OF REVIEW OF the TOWN OF TIVERTON.**

**HARMEL CORPORATION**

v.

**MEMBERS OF the ZONING BOARD OF REVIEW OF the TOWN OF TIVERTON and Barbara Cruz.**

**No. 90–361–M.P.**

Supreme Court of Rhode Island.

Feb. 4, 1992.

Jeffrey Gladstone, Steven E. Snow, Partridge, Snow & Hahn, Providence, for plaintiff.

Vernon L. Gorton, Portsmouth, Clement Brown, James Donnelly, Jr., Fall River, for defendants.

## OPINION

MURRAY, Justice.

This matter is before this court on a petition for certiorari filed by Harmel Corporation (Harmel). The petitioner asks us to review a Superior Court judgment affirming two decisions of the Tiverton Zoning Board of Review (the board). On February 10, 1988, the board denied Harmel's appeal from the Tiverton building inspector's denial of a building permit for a proposed addition to an existing building. Thereafter, on September 27, 1988, the board sustained an appeal of the issuance of a building permit to Harmel, thereby revoking said permit. For the reasons set forth below, the petition for certiorari is granted and the judgment below is quashed.

The following facts are established by the record. In approximately 1948, the Ponta Delgata Club, Inc. (the Ponta), a Rhode Island nonbusiness corporation, constructed a building located at 31 Shove Street, Tiverton, Rhode Island. This building contains two levels. The lower level was designed and had been used by the Ponta both as a private club and as a public restaurant. The upper level contains a banquet facility that was used by the Ponta for bingo, dances, weddings, and private parties. The building was approved by the Tiverton Fire Department for maximum occupancy of 300 persons—175 downstairs and 125 upstairs.

In March 1970 the town of Tiverton enacted a zoning ordinance and adopted a comprehensive plan and zoning map. As a result the Ponta's building at 31 Shove Street was classified as falling in a R15—high density residential—zoning district. It is undisputed that the use of the property by the Ponta prior to the enactment of the zoning ordinance created a legal nonconforming use.

In January 1985 the Ponta closed its club/restaurant and banquet facility at 31 Shove Street and, with the town's approval, moved its facility to a newly constructed building across the street at 70 Shove Street. The Ponta transferred its licenses for food and beverages to its new building and continues to operate a club/restaurant and banquet facility in that building.

In August 1986 Harmel and the Ponta entered into a long-term lease and option to purchase the land and building located at 31 Shove Street.[1] Harmel intended to continue to operate the facility as a restaurant and banquet facility. To that end Harmel commenced in 1986 what proved to be a very involved process of obtaining the appropriate commercial liquor license. Because they are not relevant to the instant dispute, we decline to recite the facts of that lengthy process. Suffice it to say that it took the Ponta two years and judicial intervention to prove its eligibility for and to obtain a commercial liquor license.

On January 8, 1988, Harmel appealed to the board from the Tiverton building inspector's denial of a building permit for a proposed addition to the existing building at 31 Shove Street. The building inspector's denial was based on his opinion that the use of the land adjacent to the existing building for parking would not be an allowable accessory use. The board held a pub-

---

1. Harmel Corporation in conjunction with its closely affiliated corporation, The Hot Spot, Inc. (Hot Spot), entered into the lease agreement. Hot Spot was incorporated to manage the proposed restaurant and banquet facility. Harmel was to be responsible for the renovations of the premises.

lic hearing on Harmel's appeal and heard extensive testimony on this issue. In its decision dated February 10, 1988, the board upheld the building inspector's decision.

On August 2, 1988, Harmel applied for a second building permit to install, among other things, a new kitchen. The building inspector granted the permit on August 2, 1988, and Tiverton resident Barbara Cruz appealed that decision to the board. Again the board held a public hearing and heard extensive testimony. In its decision dated September 27, 1988, the board voted to overturn the building inspector's decision. The board held that Harmel's proposed use as a restaurant and banquet facility was not a pre-existing nonconforming use. This decision, in effect, revoked Harmel's building permit. On appeal the Superior Court affirmed both zoning board decisions. Additional facts will be set forth as necessary.

The issues presented are (1) whether the trial justice erred in affirming the zoning board's decision to sustain the appeal of the issuance of the building permit because it held that the Ponta's proposed use as a restaurant and banquet facility constituted a change of use and (2) whether the trial justice erred in upholding the zoning board's denial of a building permit for a proposed addition to the building based on its decision that parking would not be an allowable accessory use.

The right of appeal of a zoning-board decision is granted by G.L.1956 (1991 Reenactment) § 45–24–20. This statute provides that a decision of a zoning board may be reviewed by the Superior Court. Section 45–24–20(d) states in part:

"The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are: * * * (4) Affected by other error of law; [or] (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record."

On petition for certiorari to this court we must examine whether the trial justice acted within his or her authority under § 45–24–20. *Felicio v. Fleury*, 557 A.2d 480, 481 (R.I.1989) (citing *Hardy v. Zoning Board of Review of Coventry*, 119 R.I. 533, 541, 382 A.2d 520, 525 (1977)). "In reviewing the Superior Court justice's decision, we do not weigh the evidence but rather determine whether the evidence and inferences drawn from it support the judgment." 557 A.2d at 481–82.

Having these rules in mind, we have examined the entire record in this case and have determined that with respect to the issue involving the pre-existing nonconforming use, the zoning board's conclusion is erroneous in view of the reliable and substantial evidence presented at the public hearing. Additionally we hold that with respect to the issue involving parking as an accessory use, the zoning-board decision was affected by error of law. Hence we find that the trial justice did not act within his authority under § 45–24–20.

■ Article V, § 1 of the Tiverton zoning ordinance defines a legal nonconforming use as "[a]ny use of land, premises, or combination thereof, which was lawfully in operation at the time of passage of [the applicable zoning] ordinance, but is not in conformity with the provisions of [that] ordinance * * *." The town of Tiverton zoning ordinance was adopted on March 23, 1970, at which time the Ponta had been operating a club/restaurant and banquet facility for over twenty-two years. The parties agree that the use of the property by the Ponta prior to the enactment of the first zoning ordinance in the town of Tiverton created a legal nonconforming use. This dispute arises out of the assertion that the use to which Harmel wishes to put the property changes it in a way that destroys the pre-existing nonconforming use.

■ A change of use occurs when the proposed use is "substantially different from the nonconforming use to which the premises were previously put * * *." *Jones v. Rommell*, 521 A.2d 543, 545 (R.I. 1987) (quoting *Souza v. Zoning Board of Review of Warren*, 104 R.I. 697, 699, 248

A.2d 325, 327 (1968)). "A change of use eliminates the exemption of a nonconforming use from recently enacted zoning ordinances." 521 A.2d at 545. Thus a determination that a change of use occurred mandates compliance with the zoning regulation in effect at the time the change is made. *Id.* Hence if Harmel's proposed use of the premises at 31 Shove Street as a restaurant and banquet facility is determined to be substantially different from the previous use of the premises by the Ponta as a club/restaurant and banquet facility, Harmel is not exempt from the R15 zoning-district limitations. In that instance Harmel would not be entitled to issuance of the building permits.

■ We begin our analysis with the proposition that a mere change in ownership does not destroy the pre-existing nonconforming use. *Town of Coventry v. Glickman*, 429 A.2d 440, 442 (R.I.1981). Accordingly the fact that the Ponta, a nonbusiness corporation, leased the premises to Harmel, a business corporation, is not relevant for purposes of this analysis.

A scrutiny of the record reveals that Harmel's proposed use of the premises is not substantially different from the Ponta's prior use of the same premises. It is undisputed that the Ponta occupied the premises from 1948 until 1985, operating both as a club and as a restaurant. Charles Carvalho, a member of the club for thirty-seven years who served as president for seven years, testified at the September 8, 1988 hearing that the Ponta operated both as a club and a as restaurant. He testified that the lower level was used to serve food and liquor, and that the upper level was used as a function hall for weddings, dances, and the like. Carvalho stated that none of these activities were restricted to members of the club. In fact, he stated, there were no membership cards distributed to the members of the club. Carvalho testified that the Ponta advertised to the public at large and attracted a substantial crowd from neighboring towns and cities. When asked what the Ponta's primary use of the premises was, Carvalho responded: "[I]t's hard to say * * * primarily both." On cross-examination, however, Carvalho stated that the club was the primary purpose of the building and that the restaurant was secondary. Carvalho also stated that there were membership meetings held on the premises and that there were showers accessible only to members.

Carvalho further testified that the Ponta held a common victualer's license during his term in office, as well as a "BV" liquor license. Beverly Lopes, the town clerk, also testified regarding the Ponta's operating licenses. She stated that the town records indicate that from 1960 to 1985, the Ponta maintained a common victualer's license, which allows an establishment to "cook and sell food." The Ponta also maintained in that period a "BV" liquor license, which allows an establishment to sell alcoholic beverages. Lopes distinguished in her testimony a class-D liquor license from a BV liquor license. A class-D liquor license is considered a "club license" and has several "restrictions." A BV liquor license is one granted to "all liquor licensed establishments." It is our opinion that the issuance of a BV liquor license to the Ponta illustrates that the town of Tiverton perceived the Ponta as a full-liquor-licensed establishment, not merely a club with a limited permit to sell alcohol.

The board also heard the testimony of Dorothy St. Laurent, who leased the kitchen from the Ponta from October 1981 to August 1982. St. Laurent testified that she rented the kitchen to run the Chatterbox Restaurant for profit. She stated that she advertised as such to the public, as well as to members of the Ponta. St. Laurent maintained the appropriate license from the town of Tiverton to operate as a restaurant.

Harmel testified that it intends to operate the premises as a "full restaurant and banquet facility * * * similar but a little more sophisticated" than the facility operated by the Ponta. Harmel anticipates using the lower level as a restaurant, with both a sandwich shop and a formal dining room, and the upper level as a banquet facility. Harmel asserts that its proposed use is not substantially different from the

prior use by the Ponta. We agree. We find no evidentiary support for the board's finding that the proposed use is substantially different from the previous use. Both uses involve a restaurant open to the public and a banquet facility available for weddings, dances, and so forth. We conclude that notwithstanding the existence of a club, the Ponta operated as a public restaurant and banquet facility. The board's conclusion that Harmel's proposed use constitutes a change of use is completely unsupported by competent evidence. The trial justice therefore erred in affirming the zoning board's decision to sustain the appeal of the issuance of the building permit to Harmel.

■ The second issue for our consideration is whether Harmel's proposed use of an adjacent parcel of land as a parking lot would be an allowable accessory use. Harmel contends that such use is an appropriate accessory use. We agree.

Article III, § 8(a), of the Tiverton zoning ordinance allows an "accessory use which is clearly incidental and secondary to the principal permitted use of the premises * * * provided, however, that such accessory use shall be located on the *premises* to which it applies and shall not be detrimental to, or impair adjacent properties, or the neighborhood." (Emphasis added.) The board upheld the building inspector's determination that the proposed parking lot was not on the premises to which it applies because it was on a separate lot that is clearly delineated as a separate lot in the land-evidence records of the town. That decision, however, erroneously focuses on whether the accessory use would occur on a separate lot. The ordinance permits such use if it is on the same premises as the principal use. Accordingly the proper inquiry is whether the proposed parking facility would be on the same premises as the restaurant and banquet facility.

■ What constitutes "premises" within the meaning of the zoning ordinance is a question of fact. The evidence reveals that the land in question constitutes lot Nos. 1, 2 and 3 on the town of Tiverton assessor's map No. 27, which was entered by Harmel

as an exhibit at the February 8, 1988 hearing. The building is located on lot No. 3, and the area that Harmel seeks to use for additional parking is also on lot No. 3. Accordingly the parking would certainly constitute an accessory use on the same premises as the principal use if Harmel's view was adopted.

However, there was also evidence demonstrating that the land constitutes more than just three lots. The building inspector argued that the land is in fact ten separate lots of record. He introduced into evidence a plat plan that designates lot Nos. 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, all of which are owned by the Ponta. The evidence indicates that the building exists on lot Nos. 11 and 13 and that lot Nos. 15 and 17 are used, and have always been used, as a parking lot. Lots 8 and 10 are the lots now in dispute. The building inspector contends that these are separate lots and that these lots have been used only as picnic grounds for the club/restaurant and for access to the club. Accordingly lot Nos. 8 and 10 cannot be used for parking because it would result in an accessory use on a different lot of record. Apparently the building inspector bases his argument on the notion that the terms "premises" and "lots of record" are equivalent. As previously stated, it is our opinion that they are not equivalent.

In *Sanfilippo v. The Board of Review of Middletown*, 96 R.I. 17, 20, 188 A.2d 464, 466 (1963), we held that "tax assessors' plats and the method of designating lots thereon are not conclusive in determining the question whether separate lots so designated and separated constitute one lot for zoning purposes." We conclude that the same holds true for the plat plan offered into evidence by the building inspector. The board's reliance, therefore, on the plat plan for the proposition that the land consists in fact of separate lots of record and that this separateness is dispositive on the issue of accessory use is affected by error of law. Hence we shall proceed to examine other factors to determine if the land in dispute is part of the same premises as the land on which the building exists.

The evidence illustrates that the land in question is contiguous to the land on which the building is located. Moreover, the land which Harmel intends to use for parking has been under the same ownership for an extended period and has always been used for the purposes of the restaurant. In fact the Ponta has always used that land for another, albeit different, accessory use. The Ponta used the land as picnic grounds for an overflow of patrons from the restaurant. Additionally the Ponta used part of that land as an access road to the restaurant.

Upon examination of the evidence we conclude that the land constitutes premises under the zoning ordinance. The land has consistently been used as a single parcel by the Ponta and will continue to be used as such by Harmel. We believe that the board's decision was affected by error of law and that the trial justice erred in affirming the board's decision to uphold the building inspector's denial of the building permit based on the notion that the parking would not constitute an accessory use.

The petition for certiorari is granted. The judgment of the Superior Court is quashed, and the case is remanded with instructions to enter orders directing the zoning board and building inspector of the town of Tiverton to issue to the petitioner the requested building permits.