DECISION
This is an appeal from a decision of the Zoning Board of Review for the Town of Tiverton (Board). The plaintiff is seeking reversal of the Board's decision to deny the plaintiff's motion to withdraw the application seeking a use variance, without prejudice, and, the Board s denial of the request for a variance. Jurisdiction in this Court is pursuant to G.L. 1956 §45-24-69.
Facts/Travel
Brian Dupere (plaintiff) owns the subject property described as Lot 3 of Assessor's Plat 27, located at 31 Shove Street, Tiverton, Rhode Island. The property is presently zoned R-15, a high density residential district. Town of Tiverton Zoning Ordinance, Article III, 1. A restaurant and tavern/night club is not a permitted use in a R-15 zone. Town of Tiverton Zoning Ordinance, Article IV, § 8.
The property at issue has been the subject of prior litigation in our courts, the end result of which is reported inHarmel v. Tiverton Zoning Bd. of Review, 603 A.2d 303 (R.I. 1992). The building located at the site was constructed in 1948 by the Ponta Delgata Club, Inc., a nonbusiness corporation. (Objector's Exhibit B). The structure contains two levels. The lower level was designed and used by the Ponta Delgata Club, Inc. as a private club and as a public restaurant. The upper level, which contains a banquet facility, was used for private functions. Id. In 1970, the Town of Tiverton adopted the Tiverton Zoning Ordinance (Ordinance) causing Lot 3 to be classified as located in a R-15 zoning district. Id. Therefore, the prior use of the property as a private club and public restaurant created a legal nonconforming use.[1]
In 1986, the Harmel Corporation and the Ponta Delgata Club, Inc., entered into a long-term lease and option to purchase the land. Id. The Tiverton Building Inspector (Building Inspector) granted Harmel's application for a building permit to install a new kitchen at the site. (Objector's Exhibit B). Issuance of the permit was appealed by a neighboring property owner. Id. The Board sustained the appeal, finding that the proposed use as a restaurant and banquet facility was not a preexisting nonconforming use. Id. The Supreme Court disagreed with the Board's finding and held that Harmel's planned use of the property did not amount to a change of use because the proposed use was not substantially different from the prior use of a night club and restaurant. (Objector's Exhibit B). The Court noted that despite the existence of a private club, the property was used as a public restaurant and banquet facility. Id. Accordingly, the Court concluded that both the preexisting legal nonconforming use and the proposed use, involved a restaurant open to the public and a banquet facility available for private functions. Id.
In 1992, the plaintiff purchased the property from the Ponta Delgata Club, Inc., (Application for Variance dated 10/11/94; Objector's Exhibit A). On December 2, 1992, the plaintiff was before the Board seeking a special exception to operate a health club on the upper level of the building. (Objector's Exhibit A; 12/7/94 Tr. at 24). The plaintiff testified that if the health club operated successfully, he hoped to extend the club's operations to the lower level, which included plans for a health food, snack and juice bar. (Objector's Exhibit A; 12/7/94 Tr. at 27). In addition, the plaintiff stated that he did not intend to serve alcohol at the site. Id. The Board unanimously decided that the proposed use of the property as a health club was a legal nonconforming use of the property and, therefore, zoning relief was unnecessary. (Decision of Zoning Board of Review dated 12/2/92).
Thereafter, the plaintiff used the upper level of the premises as a health club. On October 11, 1994, the plaintiff applied to the Board for a variance to operate a tavern/night club on the property. (Application for Variance dated 10/11/94). At a properly advertised hearing held on December 7, 1994, the plaintiff appeared pro se. He testified before the Board that he believed that the proposed use was a preexisting nonconforming use that had never been abandoned and, that a variance was unnecessary. (12/7/94 Tr. at 8-9). In addition, he stated that the building had not been used as a restaurant and tavern for seven years. (12/7/94 Tr. at 10). The plaintiff further testified that use of the property as a health club was not profitable and that the business would not survive. (12/7/94 Tr. at 11-12, 15, 16).
Jose and Barbara Cruz, abutting property owners, appeared at the hearing to object to the application. Counsel for the objectors offered the testimony of Peter Merit, a real estate broker and certified real estate appraiser. The Board recognized Mr. Merit as an expert qualified to testify regarding the application. (12/7/94 Tr. at 31). Mr. Merit stated that he was familiar with the application and testified that it was his opinion that the existing use of the property as a health club was a nonconforming commercial use in a residential zone. (12/7/94 Tr. at 31, 33). He further opined that the proposed use of the property as a restaurant and tavern/night club, was a more intensive use of the property and would thereby increase the level of nonconformity. (12/7/94 Tr. at 33-34). Mr. Merit testified that in his opinion, the proposed use would have an adverse impact on the character and amenity of the surrounding residential neighborhood, along with an adverse impact on neighboring property values. Id.
In response to the opposition to his application, the plaintiff requested that the Board allow him to withdraw the application without prejudice. (12/7/94 Tr. at 37-38, 46). In support of his request, the plaintiff stated:
 " . . . I request to take back this petition without prejudice and let me get a lawyer. See, I've talked to all surrounding area, every person, except Mrs. Cruz. She's the only one against it. And I could get written permission from every single house in the neighborhood that no problem with it. And I've even had somebody talk to her and they said that she wouldn't fight it. But I find tonight she is, so I need a lawyer. I request to take back my petition without prejudice and get a lawyer and I'm going to fight this . . . I want to get a lawyer against this lawyer here and against the Council. We'll start all over again . . ." (12/7/94 Tr. at 37-38).
Counsel for the objectors objected to the motion to withdraw without prejudice noting that they had already incurred expenses in opposition to the plaintiff's application. (12/7/94 Tr. at 39). The plaintiff's request prompted the following discussion:
 "MR. CHAIRMAN: Basically, the difference between what you're — I think what you're asking is to withdraw without prejudice which means that you could go back and reapply and start over again.
 MR. DUPERE: Because I was told nobody was going to fight this in town . . .
 MR. CHAIRMAN: What you're asking for is the right to withdraw and then come back when you're ready to present this all over again, start from scratch
 MR. DUPERE: With legal counsel.
 MR. CHAIRMAN: — and present it all over again. And what Mr. Leary is saying is that he doesn't mind you withdrawing, but he objects to your withdrawing without prejudice. If we allow you to withdraw with prejudice, then you wouldn't be able to come back for — What?
 MR. DUPERE: One year.
 MR. CHAIRMAN: For one year.
 . . .
 MR. DUPERE: I want to be able to respond to this as fast as I can with a lawyer.
 . . .
 MR. GUILLEMETTE: Mr. Leary has already got his evidence on testimony — on the record. We could continue for a month, if he wanted to come back with a lawyer and then finish up his closing argument . . . Jerry wouldn't have to bring back . . . anybody again and incur the expense.
 . . .
 MR. DONNELLY: But testimony is over at this point in time.
 . . .
 MR. CELLEMME: . . . At this point, I wouldn't — trying to be fair to the public in every way that I can — I would go along with a continuance. But I would like to get in the testimony tonight, what abutters were here that were sent notices, what they have to say and still allow a continuance. I can't go along with withdrawing without prejudice at this point, not after everybody has presented everything they've had to say. I think it went too far for that. I really don't want to nail the applicant with withdrawing with prejudice because that's not totally fair. So a continuance is about the only thing I'd feel comfortable with for everybody, because then the testimony holds, he doesn't have to go to the expense of bringing back someone else. But I would like to hear the abutters that were sent notices . . . " (12/7/94 Tr. at 39-40, 43-45).
The Board voted unanimously to continue the application, except for the taking of testimony from any of the abutters who appeared and wished to testify. (Zoning Board Decision dated 12/7/94; 12/7/94 Tr. at 51).
Three neighboring property owners testified in opposition to using the property as a restaurant and night club. Gerald Geary, the owner of property located at 57 Shove Street, expressed concern with the adverse impact the proposed use would have on the value of his property and traffic in the area. (12/7/94 Tr. at 52-53). Mr. Geary also testified that in 1992 he received a letter from the plaintiff regarding the 1992 application for a special exception to operate a health club at the site. He stated that the letter indicated that no alcohol was to be served at the premises.
On January 11, 1995, the hearing continued at which time the plaintiff, represented by counsel, renewed his motion to withdraw the application for a variance without prejudice. (1/11/95 Tr. at 3). The motion was met with another objection from counsel representing the objectors. The Board voted unanimously to deny the motion to withdraw without prejudice and voted to continue the matter. (1/11/95 Tr. at 27, 28). The hearing on the plaintiff's application resumed on April 5, 1995. At the hearing, the plaintiff filed yet another motion to withdraw the application without prejudice, or in the alternative, to amend the application to that of an appeal from the October 10, 1994 Decision of the Tiverton Town Council to deny the plaintiff's request for a Class BV liquor license. (Plaintiff's Exhibit A).
At the April 5, 1995 hearing, the Building Inspector, William Eccles, testified before the Board. He stated that in 1992, the plaintiff told him that he did not want liquor to be served at the premises. (4/5/95 Tr. at 29). Mr. Eccles explained that the plaintiff does not have the appropriate licenses to serve food at the premises, but that snack and soda machines were permitted.Id. In addition, he stated that the bar which existed on the lower floor had been removed from the building. (4/5/95 Tr. at 30). Mr. Eccles concluded that for these reasons, as the Building Inspector, he would not issue a building permit for a restaurant and bar on the property. (4/5/95 Tr. at 31).
Following the hearing, the Board voted unanimously to deny the renewed motion to withdraw without prejudice and, in addition, to deny the motion to treat the application as an appeal. (4/5/95 Tr. at 43-44, 45-47). The Board also voted four to one to deny the plaintiff's application for a variance. (4/5/95 Tr. at 60). The plaintiff filed a timely appeal to this Court.
Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1556 § 45-24-69(D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the Zoning Board if he or she conscientiously finds that the Board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO Local, 119 R.I. 506, 380 A.2d 521 (1977)).
The Motion to Withdraw
The plaintiff argues that the Board erred in denying him permission to withdraw the application for a use variance without prejudice. Article XVIII, § 9 of the Ordinance, entitled "Repetitive Petitions," provides in its entirety:
 "a. Where the Town Council, in the case of an amendment, or the Zoning Board, in the case of a special use permit or variance, denies (emphasis added) an application, the Town Council or the Board may not consider another application requesting the same or substantially similar amendment, special use permit or variance, for a period of one (1) year from the date of such denial or withdrawal (emphasis added).
 b. The Town Council or the Zoning Board, as the case may be, may accept such an application after six (6) months, provided that the application is accompanied by an affidavit setting forth facts, to the satisfaction of said Council or Board, showing a substantial change of circumstances justifying a rehearing."
The Ordinance does not distinguish between a withdrawal of an application "with prejudice" and a withdrawal "without prejudice." For purposes of § 9, the denial of an application is equated with a withdrawal. Moreover, the intent of this section is clear. Pursuant to § 9, withdrawal of an application seeking a variance precludes the applicant from bringing another application requesting the same or substantially similar relief within a one year period.
In this case, plaintiff sought to avoid the ramifications of § 9 of the Ordinance. At the initial hearing, the plaintiff acknowledged that his desire to withdraw the application and "start all over again" was triggered by the unexpected opposition to the application. Plaintiff was unprepared for opposition and unrepresented by counsel. His initial request to withdraw the application came while the hearing was in progress. Objectors had appeared to testify. An expert witness had already presented testimony at the expense of the objectors.
Nonetheless, the Board did not preclude the plaintiff from withdrawing his application. The plaintiff chose to continue rather than halt the proceedings and wait an additional year before refiling. He offered no compelling reason why he should be exempt from the provisions of the Ordinance. On the contrary, plaintiff's conduct illustrates the very need for such a legislative provision. By filing the application, plaintiff set in motion a costly and time consuming procedure. The hearing was duly advertised. Abutters were invited to appear. Plaintiff was put on notice to properly prepare for the hearing and to anticipate opposition. His failure to do so was at his own risk. Otherwise, an applicant could manipulate the system and turn hearings into mere dress rehearsals at the applicant's option. No applicant would be required to prepare or engage counsel. Only the objectors would risk a final adverse determination. Any time the applicant became dissatisfied with the progression of the hearing, he could simply withdraw the application and start anew.See c.f. Roger Williams College v. Gallison, 572 A.2d 61 (R.I. 1990) (authority of trial justice to remand case to zoning board for further proceedings should not be exercised to afford remonstrants another opportunity to present case when evidence initially presented is inadequate); Birchwood Realty Inc. v.Grant, 627 A.2d 827 (R.I. 1993) (Superior Court s power to order remand under § 42-35-15 (g) is to correct deficiencies in the record); Lemoine v. Department of Mental Health, R. Hosp.,320 A.2d 611 (1974) (Superior Court's authority to remand case for further proceedings should be exercised when necessary to prevent manifest injustice).
Section § 45-54-58 of the enabling act, permits the enactment of zoning ordinances providing time periods which must pass before successive similar applications for zoning relief may be filed. Such a provision was addressed in Marks v. Zoning Bd.of Providence, 98 R.I. 405, 203 A.2d 761 (1964). The ordinance in that case provided, in pertinent part:
 "No . . . application for an exception or variance therefrom shall be accepted by the . . . Secretary of the Zoning Board of Review if a petition or application praying for the same . . . exception or variance has been denied or the petitioner granted leave to withdraw within the preceding twelve months (emphasis added), provided, that such [an] application may be accepted at any time with the consent of the . . . Zoning Board, if it shall include or be accompanied by an affidavit which, in the opinion of . . . said Zoning Board of Review sets forth facts indicating a substantial change of circumstances justifying a hearing on said . . . application for exception or variance."
98 R.I. at 407, 203 A.2d at 763. The plaintiff argued that the above section permitted a property owner to ask for a redetermination of identical issues every twelve months. The Court disagreed noting that the section of the ordinance, "does no more than prohibit the city clerk from accepting a successive application with the one-year period unless the applicant has first satisfied the board by affidavit that there has been at least, prima facie, a substantial change in circumstances. It represents a legislative attempt to prevent the zoning docket from being cluttered with successive applications by applicants previously denied relief" 98 R.I. at 408, 203 A.2d at 763-4. Moreover, the Court held that giving the ordinance the construction urged by the plaintiff "would defeat the premise upon which the doctrine of administrative finality is bottomed." 98 R.I. at 408, 203 A.2d at 764.
Likewise, § 9 of the Ordinance reflects a legislative attempt to prevent the zoning docket from unnecessary clutter and to give a degree of finality to the process. Accordingly, there was no basis in fact or in law to warrant withdrawal of the plaintiff's application "without prejudice." This Court finds that the Board's decision to deny the plaintiff's motion to withdraw the application, free from the one year refiling provision in the Ordinance, was in accordance with the policy served by the enabling act and § 9 of the Ordinance and was not an abuse of discretion.
At the hearing, the plaintiff argued that a variance was unnecessary because the proposed use of the property as a restaurant and tavern/night club was a legal nonconforming use. The Board was without jurisdiction to entertain a claim that the plaintiff had a right to a legal nonconforming use. DuBois v.Zoning Bd. of Providence, 101 R.I. 461, 224 A.2d 606 (1966). It has long been established in Rhode Island, that applicants are precluded on a petition for a variance or exception from asserting a claim of right to a nonconforming use. Id. Applicants are not foreclosed, however, from advancing a claim of right to a nonconforming use in other appropriate proceedings, "as for example, by way of an application to the building inspector for a building permit." Zuena, 102 R.I. at 300-1, 229 A.2d at 847. Such an application could have been filed following a withdrawal of the instant petition. Because that would have been a different proceeding, the one year requirement would not have applied. The Court cannot conclude that the plaintiff's rights were substantially prejudiced by the Board's denial of the motion to withdraw the application "without prejudice."
Furthermore, once the plaintiff permitted consideration of the application, the Board was under a duty to hear and decide the plaintiffs application for a variance. § 45-24-61(A); Tiverton Zoning Ordinance, Article XV, § 3. Accordingly, review by this Court on appeal is confined to a consideration of the propriety of the Board's action upon the application for a variance. Heffernan, 49 R.I. at 286; 142 A. at 480.
The Application for a Variance
When seeking a true variance, as opposed to a dimensional variance, the applicant bears the burden of proving that being restricted to the permitted uses within the zoning ordinance will deprive him or her of all beneficial use of the property.[2]Almeida v. Zoning Bd. of Review of Town of Tiverton,606 A.2d 1318 (R.I. 1992). The petitioner must demonstrate that the hardship suffered is due to the "unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area." § 45-24-41 (C)(1). Moreover, there must be evidence in the record "[t]hat hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." § 45-24-41(C)(2).
"Hardship . . . is concerned not with personal difficulties, but solely with whether rigid insistence upon the property being devoted to a use permitted by the zoning ordinance will deprive its owner of all beneficial use of his property and will therefore be confiscatory." Worrell v. Del Sesto, 116 R.I. 409, 410, 357 A.2d 443, 444 (1976). An applicant may not rely on bald statements of economic unfeasibility, but must set forth probative evidence such as data from financial statements or cost data. Gaglione v. DiMuro, 478 A.2d 573, 576 (R.I. 1984); Goodmanv. Zoning Bd. of Review of Cranston, 105 R.I. 680, 681,254 A.2d 743, 746 (1969). "`To be entitled to a zoning ordinance, a landowner must show that the present return on the property [is] so low that to require its continued devotion either to its present use or to others permitted under the ordinance would be confiscatory. Without such a showing, [a] naked assertion of economic unfeasibility is meaningless.'" Gaglione, 478 A.2d at 576; Goodman, 105 R.I. at 685, 259 A.2d at 746.
In the instant matter, the plaintiff failed to demonstrate before the Board that enforcement of the permitted residential use, or, the continuation of the legal nonconforming use of the property as a health club, would deprive him of all beneficial use of his property. Throughout the hearing, the Board expressed concern over the fact that the plaintiff had presented no evidence to support an application for a variance. (12/7/94 Tr. at 18, 21, 44). The only evidence of hardship is the plaintiff's bald assertion that the health club was not a profitable business at that location and would not survive. (12/7/94 Tr. at 11-12, 15, 16). Moreover, deprivation of a more profitable use of the land is not in and of itself proof of unreasonable and unnecessary hardship amounting to confiscation. Sundin v. ZoningBoard of Review, 98 R.I. 161, 200 A.2d 459 (1964).
After a review of the whole record, this Court concludes that the plaintiff has failed to satisfy his burden for variance relief under the Tiverton Ordinance and § 45-24-41 of the enabling act. Additionally, this Court finds that the Board's decision is supported by reliable, probative, and substantial evidence of the whole record and that substantial rights of the plaintiff have not been prejudiced. Accordingly, the Board's decision is hereby upheld.
Counsel shall submit the appropriate judgment for entry.
[1] Pursuant to Article XIV, § 1 of the Ordinance, "[a]ny use of land, premises, structure or combination thereof, which was lawfully in operation at the time of the effective date of this ordinance, but is not in conformity with the provisions of this ordinance, shall be considered a nonconforming development."
[2] Article XVII § 2 of the Ordinance provides in pertinent part:
(a) The Board may authorize upon application in specific cases a variance in the application of the terms of this ordinance in accordance with the following provisions: (1) That special conditions and circumstances exist which are special or peculiar to the land or structure involved and which are not applicable to other lands or structures in the same zoning district and are not due to a physical or economic disability of the applicant. (2) That such relief will not be contrary to the public interest and that owing to special or peculiar site or structural conditions literal enforcement of the provisions of this ordinance would result in an unnecessary hardship to the applicant. (3) That the unnecessary hardship which an applicant seeks to avoid shall not have been imposed by any prior action of the applicant. Purely monetary gain or loss shall not be considered to be an unnecessary hardship (4) That the ranting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based . . .
(b) In addition to the above standards the Board shall require that evidence be entered into the record of the proceedings showing that: (1) In granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of the zoning ordinance;