DECISION
In the above consolidation of cases, there are common issues of law and fact that are dispositive in each case. Jurisdiction is pursuant to R.I.Gen.Laws 45-24-69.
Both parties challenge the validity of a decision issued by the Tiverton Zoning Board of Review. The decision that follows shall apply to all three civil actions.
 FACTS AND TRAVEL
In the Town of Tiverton overlooking the Sakonet River, lies a family homestead at 377 Seapowet Avenue which is the subject premises of the instant dispute. Appellants David and Rosalie Durfee ("Durfees"), the record title owners of 377 Seapowet Avenue, currently operate a sawmill enterprise at the disputed premises. Appellants David Decker and Joan Patton (hereinafter referred collectively as the Deckers) own property located across the street from the Durfees at 376 Seapowet Avenue.
In 1998, the Deckers complained to the Building Inspector for the Town of Tiverton regarding the operation of a trucking business at the Durfees' 377 Seapowet Avenue property. (Tr. 12/2/98, p. 18). In his August 25, 1998 decision, the Building Inspector, Carl Dumas, determined that the Durfees' trucking operation was a valid, legal, preexisting, nonconforming use. In rendering his decision, the Building Inspector based his decision on the misconception that the first Tiverton zoning ordinance was passed in 1970.[1] As a result, he accepted evidence from the Durfees evincing the existence of their trucking business before 1970. The Deckers timely appealed the Building Inspector's decision to the Tiverton Zoning Board of Review. On December 2, 1998, the Board overruled the Building Inspector's decision and determined that the operative date anent nonconforming uses and the Tiverton Zoning Ordinance was 1964. (Tr. 12/2/98 p. 122-123).
Following the Board's decision, the Building Inspector conducted further investigation and rendered a subsequent decision on December 10, 1998. In that second decision, the Building Inspector determined that the Durfees' sawmill operation was not a preexisting, legal, nonconforming use and therefore was not allowable under the Town Ordinance.
The Building Inspector found further that the Durfees were entitled to one truck and one tractor as an accessory use to their farm under the 1964 Tiverton Ordinance. Both the Durfees and the Deckers appealed the Building Inspector's December 10, 1998 decision to the Board.
After three lengthy nights of hearings and testimony from various witnesses, the Board rendered a decision on August 18, 1999. In its decision, the Board overruled the Building Inspector and found that the Durfees had provided sufficient evidence establishing that the sawmill operation pre-dated the 1964 enactment of the Tiverton zoning ordinance and therefore qualified as a legal, preexisting, nonconforming use. The Board also ruled that the Durfees were not entitled to one tractor and one trailer as an accessory use to their farm.
On appeal, the Durfees challenge the decision of the Tiverton Zoning Board of Review ("Board") denying the Durfees the use of their trucks as an accessory use to their sawmill operation. The Durfees also contend that the Board erred by not allowing the Durfee truck operation as a legal, preexisting nonconforming use. The Deckers for their part challenge the Board's decision allowing the Durfees to continue their sawmill operation as a preexisting, legal, nonconforming use.
 STANDARD OF REVIEW
The Appellants have invoked this Court's appellate jurisdiction pursuant to R.I.Gen.Laws 45-24-69(d), which provides in pertinent part that:
 (d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing the decision of a zoning board of review, this Court must examine the entire certified record to determine whether substantial evidence exists to support the findings of the zoning board of review. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance."
Caswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented.
Bellevue Shopping Center Associates v. Chase, 574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985) (quoting Apostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 DISCUSSION The Sawmill
On appeal, the Deckers contend that the Durfees failed to provide the Board with sufficient evidence establishing the operation of the sawmill on the 377 Seapowet Avenue property prior to the enactment of 1964 Tiverton zoning ordinance.
Succinctly stated, the Deckers claim that the sawmill operation is not a lawful, preexisting nonconforming use and as a result, may not continue. Article V, 1 of the Tiverton zoning ordinance defines a legal nonconforming use as "[a]ny use of land, premises, structure or combination thereof, which was lawfully in operation at the time of the passage of . . . [the] ordinance, but is not in conformity with the provisions of . . . [the] ordinance . . ." The proponent of the nonconforming use must demonstrate that he or she lawfully established the nonconforming use prior to the town's enactment of a zoning scheme. Town of Scituate v. O'Rourke, 239 A.2d 176,180 (R.I. 1968).
During the course of three hearings in July and August 1999, the Board heard testimony from various members of the Durfee family stating the nature and use of the disputed property. The Durfees have been natives to the Seapowet area for almost three-hundred years. (Tr. 7/21/99, p. 21). During these three centuries, the Durfees have owned collectively large tracts of land which they have used for farming and logging purposes. In addition to the disputed 377 Seapowet Avenue property, members of the Durfee family also own 432 Seapowet Avenue and eighty wooded acres known as White Wine Farm located at Bulgarmarsh Road. (Tr. 7/14/99, p. 62).
At the July 14, 1999 hearing, Henry Corey Durfee, father of current title holder David Durfee and prior holder in title to 377 Seapowet, testified that he first began cutting wood and lumber on the 377 Seapowet property in 1958. (Tr. 7/14/99, p. 61). Henry Corey Durfee stated that he remembered the year 1958, because his father had died that year. As a result of his father's death, Henry Corey Durfee's mother requested that he cut the wood on the 377 Seapowet lot in order to be closer to her. (Tr. 7/14/99, p. 61).
Henry Corey Durfee further testified that it was his practice to cut trees grown at the eighty acre White Wine property located on Bulgarmarsh Road and then transport the wood to 377 Seapowet for sawing. (Tr. 7/14/99, p. 103). Henry Corey Durfee owned a log splitter, a lath machine, and a sawmill in order to process the logs. (Tr. 7/14/99, p. 72-75).
He testified that he purchased the the sawmill in either 1963 or 1964. (Tr. 7/14/99, p. 72). Henry Corey Durfee was able to reference the date of the sawmill purchase, because his son, David Durfee, entered military service in 1965 and Henry Corey Durfee recalled purchasing the sawmill prior to his son's entry into the service. (Tr. 7/14/99, p. 72).
David Durfee, current title holder of 377 Seapowet Avenue, also testified that his father operated a sawmill on the property prior to 1964. According to David Durfee, he would cut trees at the White Wine property and transport them to 377 Seapowet where he would then cut the trees into four-foot lengths and then stack them for drying. (Tr. 7/14/99, p. 114). After the four-foot lengths dried, David Durfee would then use a "saw rig . . . cut it and then split it and deliver it." (Tr. 7/14/99, p. 115). According to David Durfee, a "saw rig is exactly the same thing as a sawmill.
It's a saw on a shaft. It's run by an engine. Only the saw rig cuts it crossways and the sawmill cuts it lengthways."
(Tr. 7/14/99, p. 116).[2] David Durfee testified that this saw rig was located at 377 Seapowet Avenue in the early Sixties. (Tr. 7/21/99, p. 87). David Durfee even provided the Board with a photograph of the saw rig supporting his testimony.
In 1974, as part of an effort to protect the sawmill, David Durfee constructed a permanent structure to house the sawmill. David Durfee constructed the structure from boards that he had cut down in the woods and then cut at his sawmill. (Tr. 7/14/99, p. 130-131).
George H. Sylvia, Jr., a lifelong friend of David Durfee, testified regarding the use of 377 Seapowet prior to 1964. As David Durfee's friend, Mr. Sylvia also worked for the Durfee's wood cutting business. During his testimony, Mr. Sylvia recalled that he obtained his driver's license in 1961.
During the following summer of 1962, Mr. Sylvia and David Durfee picked up wood in the woods, drove the wood to 377 Seapowet Avenue, split the wood, and then delivered the wood to customers. (Tr. 7/21/99, p. 103-104).
In contrast to the testimony of the Durfees and Mr. Sylvia, David Decker testified that prior to 1975 a sawmill was not located at 377 Seawpowet Avenue. (Tr. 7/21/99, p. 145). Mr. Decker's family has owned their family vacation home at 376 Seapowet Avenue since his grandfather constructed the residence in 1885. (Tr. 8/18/99, p. 37). During his testimony, Mr. Decker admitted that he only spent three weeks a year at his property in Tiverton. (Tr. 8/18/99, p. 16). Mr. Decker also testified that he occasionally visited the property on weekends during the summer when not on vacation.
Based on the testimony of Henry Corey Durfee, David Durfee, and George Sylvia, Jr., the Board had sufficient evidence upon which it based its determination. Under the dictates of R.I.Gen.Laws 45-24-69(d), this Court may not substitute its judgment for that of the Board as to the weight of evidence on questions of fact. The Court concludes that the Durfees provided the Board with substantial evidence to warrant the Board's finding that the Durfees' sawmill operation predated the 1964 adoption of the Tiverton zoning ordinance. Accordingly, the Durfees' sawmill operation is a legal, preexisting, nonconforming use. Town of Scituate v. O'Rourke, 239 A.2d 176, 180 (R.I. 1968).
 The Trucking Operation
Article III, 8(a) of the Tiverton zoning ordinance provides:
 a. An accessory use which is clearly incidental and secondary to the principal permitted use of the premises or structure, shall be allowed — provided, however, that such accessory use shall be located on the premises to which it applies and shall not be detrimental to, or impair adjacent properties, or the neighborhood.
In the present case, Henry Corey Durfee testified that he used "several" trucks in the process of sawing and cutting wood at 377 Seapowet Avenue. (Tr. 7/14/99, p. 66). Specifically, Henry Corey Durfee testified that he used three trucks in his wood operation. (Tr. 7/14/99, p. 70). The trucks included a 1962 one-ton Chevrolet (Tr. 7/14/99, p. 69), a small 1949 truck (Tr. 7/14/99, p. 68), and a five-ton Mack truck (Tr. 7/14/99, p. 65, 68). In addition, Henry Corey Durfee stated that he used a 1946 tractor. In fact, he still owns this tractor. (Tr. 7/14/99, p. 68-69). Henry Corey Durfee's testimony regarding his truck use was uncontroverted. In light of Article III, 8(a) of the Tiverton Town Ordinance, the Board could not ignore this evidence. Therefore, the Board's decision denying the Durfee's the use of three trucks as an accessory use was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. R.I.Gen.Laws 45-24-69(d). Since Henry Corey Durfee used the trucks in the process of sawing, splitting, and transporting wood at the disputed location, David Durfee may continue to use three trucks in conjunction with the sawmill as an accessory use. Harmel v. Tiverton Zoning Bd. of Review, 603 A.2d 303, 307 (R.I. 1992) (an accessory use is permitted as long it is incidental and secondary to the principal permitted use on the premises). The fact that Henry Corey Durfee initially engaged in cutting wood before 1964 and David Durfee continued the operation subsequent to the adoption of the Tiverton zoning ordinance does not break the chain of nonconformity. Id. at 306.
 Conclusion
The decision of the Board finding the existence of a sawmill operation at 377 Seapowet Avenue prior to the 1964 adoption of Tiverton town ordinance was based upon substantial evidence and will not be disturbed by this Court. Therefore, the Deckers' appeal is denied. The Board's decision denying an accessory use to the Durfees' legal, preexisting, nonconforming use was clearly erroneous in view of the reliable and substantial evidence in the record. Therefore, the Durfees' appeal is sustained. They are entitled to the use of three trucks and one tractor as accessory uses to their sawmill operation, a legal, preexisting, and nonconforming use.
Counsel shall submit the appropriate judgment for entry.
[1] The first Tiverton Zoning Ordinance was passed on October 15, 1964.
[2] The Court notes that the Deckers did not offer evidence countering David Durfee's testimony regarding whether a saw rig qualifies as a saw mill.