DECISION
Appellants, Elliott T. Davis, Beatriz H. Davis, Edward L. Ursillo, and Kimberly E. Pawson ("Appellants") challenge the City of Warwick Zoning Board of Review's ("Board") decision granting a special-use permit and a dimensional variance to Appellee, Richard Renzi, ("Appellee") for the construction of a gasoline station, convenience store, and a sign. Appellants and Appellee are abutting landowners. This Court has jurisdiction pursuant to R.I.G.L. 1956 § 45-24-69. On July 9, 2002, the Court heard oral argument from Appellants, Appellee, and the City Solicitor. Having taken the matter under advisement, the case is now ready for decision. For the reasons set forth, the decision of the Board is affirmed in part and reversed in part.
 FACTS AND TRAVEL
Appellee is the current owner of property identified as Assessor's Plat 360 Lots 790, 791, 792, 793, 794, 795, 796, 798, 800, and 890. The property is located at the southeasterly corner of West Shore Road and Oakland Beach Avenue in Warwick, Rhode Island. The parcel measures approximately 56,380 square feet and is the present site of the Venetian Gardens Restaurant.
While the property is situated in a General Business ("GB") district, which provides for "a wide diversity of commercial establishments including retail, service, office, and automotive related uses" (Ordinance § 301.8), a gasoline station is not permitted as a matter of right in a General Business district. In order to construct a gasoline station in a GB zone, a property owner must first obtain a special-use permit from the Board. (Ordinance § 300, Table 1 Use Regulations, Subsection 421).
On February 9, 2001, Appellee appeared before the Board and petitioned the Board for permission to (1) demolish the existing restaurant; (2) construct a new gasoline station with five fuel dispensers and 128' x 24' canopy; (3) construct a new convenience store; and erect a new sign. In order to achieve its goals, Appellee requested two forms of zoning relief from the Board, a special-use permit for the gasoline station and convenience store and a dimensional variance for the sign.
On July 19, 2001, the Board issued a decision granting Appellee's requests for a special-use permit anent the gasoline station and convenience store and a dimensional variance for the sign.
On appeal, Appellant argues that the Board committed an error of law by granting a special-use permit in conjunction with a dimensional variance. Appellant asseverates that Newton v. Zoning Bd. of Review,713 A.2d 239 (R.I. 1998) prohibits the coupling of a special-use permit with a dimensional variance. According to Appellant, a property owner must comply with all of the criteria set forth in the Ordinance in order to obtain a special-use permit. Appellant contends that since Appellee requested a special-use permit and a dimensional variance the Board's decision was in violation of constitutional, statutory, or ordinance provisions and in excess of the authority granted to the Board by statute or ordinance.
Appellee counters that Newton is inapplicable to the instant case. Appellee argues that signs are not incidental to the dominant use on a property but instead, signs are a permitted use in a GB district. According to Appellee, the dimensional variance related to a permitted use and not to a conditionally permitted use such as a gas station. Therefore, Appellee maintains that the Board did not err by granting a special-use permit for the gas station and a dimensional variance for the sign. Appellee argues in the alternative that should this Court find thatNewton applies, Appellee will accept the special-use permit and modify its signage plans to construct fifteen (15) foot pylons.
 STANDARD OF REVIEW
General Laws § 45-24-69 provides in relevant part that when reviewing the decision of a zoning board of review, the Superior Court:
 shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The Court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing the decision of a zoning board of review, this Court must examine the entire certified record to determine whether substantial evidence exists to support the findings of the zoning board of review.Salve Regina College v. Zoning Bd. of Rev., 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245,405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board of review is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the Board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985) (quotingApostolou v. Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 ANALYSIS
As a preliminary matter, several issues were stipulated to by the parties at oral argument. First, Appellee and the City Solicitor stipulated on the record that the Board inadvertently included the following phrase in two places in its decision:
 Petitioner proposes to demolish the existing building and construct a 2,960 sq. ft. gas station/convenience store with five (5) pumps and a 128' x 24' canopy with more signage than allowed by the Ordinance.
(Decision at 1, 2) (Emphasis added). Appellee and the City Solicitor represented to the Court that Appellee did not seek nor was it awarded "more signage than allowed by the Ordinance." Counsel for Appellant was unable to connect the significance of the phrase to the relief rewarded. Rather than remand the case to the Board for further clarification, in light of these representations and stipulations, it is clear that the Board did not grant Appellee more signage than allowed, and as such, those misstatements are merely surplusage and do not require clarification.
Second, despite representations made to the contrary in the memoranda, Appellant concedes that the issue in dispute relates to the height of the sign and not to the dimensions of the canopy which physically protects the gas pumps from weather elements.
 The Special-Use Permit
The purpose of the special-use permit is to establish within the ordinance conditionally permitted uses that the local legislature has found implicitly to be in harmony with the permitted uses in the district. Nani v. Zoning Bd. of Review, 104 R.I. 150, 242 A.2d 403, 406 (1968); Westminster Corp. v. Zoning Bd. of Review, 103 R.I. 381,238 A.2d 353, 359 (1968). General Laws § 45-24-42 requires that zoning ordinances specify the particular uses authorized by the special-use permit, describe the conditions and procedures for special-use permits, establish the criteria for the issuance of special-use permits in each category, and comply with due process requirements. R.I.G.L. 1956 § 45-24-42. An applicant for a special-use permit must demonstrate that the "proposed use will not be inimical to the public health, safety, morals, and welfare." Salve Regina College v. Zoning Bd. ofReview, 594 A.2d 878, 880 (R.I. 1991) (quoting, Nani, 104 R.I. at 156, 242 A.2d at 406); Toohey v. Kilday, 415 A.2d 732, 736 (1980); Hester v.Timothy, 108 R.I. 376, 385-86, 275 A.2d 637, 642 (1971).
The Board granted Appellee's request for a special-use permit in order to construct a gasoline station and convenience store on Appellee's property. The Board found that:
 1. The special use permit is authorized by Section 300, Table 1 Use Regulations, Subsection 421, of the Warwick Zoning Ordinance.
 2. The special use meets all of the criteria set forth in said section.
 3. The granting of the requested Special Use Permit will not alter the general characteristics of the surrounding area or impair the intent or purpose of this Zoning Ordinance or the Comprehensive Plan of the City of Warwick.
(Decision at 3). The Board also granted Appellee a dimensional variance to construct an eighteen (18) foot sign instead of the fifteen (15) foot sign as permitted by Ordinance § 806.3.
According to Appellants, the Board erred by granting a special-use permit in conjunction with a dimensional variance. Appellant argues that a special-use permit must comply with the criteria as provided in the ordinance. Section 906.3 (C) of the Ordinance sets forth the requirements for obtaining a special-use permit. It provides as follows:
 In granting a special use permit, the board shall require that evidence to [of] the satisfaction of the following standards be entered into the record of the proceedings:
 (1) That the special use is specifically authorized by this ordinance, and setting forth the exact subsection of this ordinance containing the jurisdictional authorization;
 (2) That the special use meets all of the criteria set forth in the subsection of this ordinance authorizing such special use; and
 (3) That the granting of the special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this ordinance or the comprehensive plan of the city.
(Ordinance § 906.3 (C)).
Section 806.3 states that the height of a freestanding sign in a General Business district is not to exceed fifteen (15) feet. (Ordinance § 806.3). It is undisputed that Appellee's proposed sign pylon would stand at eighteen (18) feet. In fact, Appellee sought dimensional relief from these standards. However, a dimensional variance may "not be granted in conjunction with a special-use permit. The ordinance is unambiguous and imperative in requiring that a special use meet all the criteria authorizing such special use." Newton, 713 A.2d at 242. Furthermore, a dimensional variance may "be granted only in connection with the enjoyment of a legally permitted beneficial use, not in conjunction with a use granted by special permit." Id. (Emphasis in original); See also, R.I.G.L. 1956 §§ 45-24-31(61)(ii), 45-24-41(d)(2). The Ordinance defines "permitted use" as "a use by right which is specifically authorized in a particular zoning district." (Ordinance § 200.116). A gasoline station is not allowed as a permitted use in a General Business district. Therefore, in order to operate a gasoline station and obtain a special-use permit, Appellee could not rely on dimensional relief.
Appellee contends that a sign is a permitted use in all districts in the City of Warwick. Appellee further argues that the sign is not incidental to the gasoline station use but stands independently. According to Appellee, since the sign is a permitted use, the Board was authorized to issue a dimensional variance for the sign.
Section 800 of the Ordinance specifically states, "Signs are accessory uses and are permitted only in conjunction with permitted uses." (Ordinance § 800). Signs are customarily incidental and subordinate to a principal use and therefore constitute an accessory use. See Town ofNorth Kingstown v. Albert, 767 A.2d 659, 664 (R.I. 2001) (farmer's sale and removal of earth in order to construct an irrigation pond in district where earth removal excavation was a prohibited use was only temporary and incidental to the creation of an irrigation pond and thus did not constitute the primary purpose for the land, but rather was an accessory use); Harmel v. Zoning Bd. of Review, 603 A.2d 303, 307-308 (R.I. 1992) (parking lot accessory use to restaurant); LaMontagne v. Zoning Bd. ofReview, 95 R.I. 248, 250, 186 A.2d 239, 240 (1962) (home basement beauty salon does not constitute an accessory use).
Furthermore, aside from Newton analysis, Appellee failed to establish the threshold showing of hardship for an applicant seeking a dimensional variance. In order to obtain a dimensional variance, an applicant must demonstrate "that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally beneficial use of one's property." R.I.G.L. 1956 § 45-24-41(d)(2); Sciacca v. Caruso, 769 A.2d 578, 583 (R.I. 2001); Bernuth v. Zoning Bd. of Review, 770 A.2d 396, 401 (R.I. 2001). A showing of hardship is a necessary threshold for an applicant seeking a dimensional variance. Sciacca, 769 A.2d at 585. An applicant also bears the burden of showing that a factual basis appears in the record to support the statutory requirements allowing for dimensional relief, namely that there is "no other reasonable alternative." Bernuth,
770 A.2d at 401.
The record fails to reveal any evidence which would support a finding that Appellee had no other reasonable alternative other than to construct an eighteen (18) foot pylon instead of a fifteen (15) foot pylon. Accordingly, Appellee's request for a dimensional variance fails on this ground as well.
While the Board erred by granting a special-use permit coupled with a dimensional variance, a review of the record reveals that § 300 Subsection 421 of the Ordinance specifically authorizes the issuance of a special-use permit for gasoline station in a General Business District. The record also limns substantial evidence that the granting of the special-use permit will not alter the general character of the surrounding area or impair the intent or purpose of the ordinance or the comprehensive plan of the city. In fact the existing facility, the Venetian Gardens Restaurant, violates the Ordinance's current set-back restrictions. (Tr. at 8). Also, less than five (5) percent of the current site is landscaped. (Tr. at 9). The current site has no on-site drainage structures; as a result, ninety-five (95) percent of the site is impervious resulting in water simply flowing off the property and onto abutting roadways and properties. (Tr. at 10).
The new structure will be centrally located on Appellee's property and will setback approximately forty (40) feet from the road. (Tr. at 10). The new facility will feature twenty-two (22) parking spaces which is a reduction from the sixty-five (65) parking spaces currently on-site. Approximately forty (40) percent of the site will be landscaped. (Tr. at 11). As a result, the amount of water runoff on the site will be reduced. (Tr. at 13). Storm water runoff from the paved areas will now enter a storm water management system. Id.
Absent the request for the dimensional variance for the sign, the proposed gasoline station and convenience store meet the special-use criteria for building a gas station in a general business district. The Ordinance requires a minimum of 10,000 square feet of land and a minimum lot width of a hundred feet. Appellee's property measures approximately 56,380 square feet and exceeds the minimum lot width as required in § 300 Subsection 421 of the Ordinance. Since the dimensional variance was sought only to increase the height of the sign and not necessary for the construction of the gasoline station and convenience store, the Court finds that the special-use permit did comply with the remaining criteria set forth in the Ordinance. Therefore, the Court reverses the Board's decision granting a dimensional variance and affirms that portion of the Board's decision granting Appellee a special-use permit.
 CONCLUSION
After a review of the entire record, the Court finds that the Board's decision was affected in part by error of law. A special-use permit may not be granted in conjunction with a dimensional variance. Therefore, the Board's decision granting Appellee a dimensional variance to construct a sign is reversed. However, since the dimensional variance related only to the sign and not the gasoline station or the convenience store and because the special-use permit met the criteria set forth in the ordinance, the Board's decision granting Appellee a special-use permit is affirmed.
Counsel shall submit the appropriate judgment, for entry by the Court after notice.